IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| G.A., by his parents EMILY and STEPHEN ARFF | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) Case No.:  4:25-CV-01685-SRW | |
| | ) | |
| SPECIAL SCHOOL DISTRICT | ) | |
| OF ST. LOUIS COUNTY and | ) | |
| ROCKWOOD SCHOOL DISTRICT | ) | |
| | ) | |
| Defendants. | ) | |

### MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD WITH LIMITED WITNESS TESTIMONY

Plaintiff G.A. (Student), by his parents, Emily Arff (Mother) and Stephen Arff (Father) (collectively, Parents), seek leave to supplement the administrative record with limited testimony from disclosed witnesses whom Plaintiffs were unable to call during the administrative hearing because of the presentation-time limits imposed by the Missouri Administrative Hearing Commission (AHC). This is not a request to relitigate the administrative hearing. It is a request to complete a record the administrative process prevented Plaintiffs from making.

The requested testimony is relevant, non-cumulative, and directed to the factual findings and legal conclusions the AHC made against Plaintiffs after truncating their case-in-chief. Supplementation is therefore necessary for this Court to conduct the review required by 20 U.S.C. § 1415(i)(2)(C), based on the preponderance of the evidence. In support of this motion, Plaintiffs state as follows.

### MEMORANDUM IN SUPPORT

**I.  Legal Framework**

### A. **Standard of Review in IDEA Proceedings**

The IDEA provides that an aggrieved party may appeal the decision of a state administrative body to a federal district court. 20 U.S.C. § 1415(i)(2)(A). The party challenging the outcome of the state administrative hearings bears the burden of proof. *E.S. v. Indep. Sch. Dist., No. 196*, 135 F.3d 566, 569 (8th Cir. 1998).

As the Western District of Missouri observed, "Congress intended 'judicial review in IDEA cases [to] differ [] substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review.'" *Lathrop R-II Sch. Dist. v. Gray ex rel. D.G.*, No. 08-6040-CV-SJ-GAF, 2009 U.S. Dist. LEXIS 35751, at *3 n. 1 (W.D. Mo. Apr. 28, 2009) (citing *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001)). In IDEA actions, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). This preponderance of the evidence standard "is a less deferential standard of review than the substantial evidence test common to federal administrative law." *Indep. Sch. Dist. No. 283 v. S.D. ex rel. J.D.*, 88 F.3d 556, 561 (8th Cir. 1996). That said, "it still requires the reviewing court to give 'due weight' to agency decision-making." *Id.* (citing *Board of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)).[1]

---

[1] Existing case law on the standard of review in IDEA cases predates the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). *Loper Bright* held: "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the [Administrative Procedures Act] requires . . . and need not . . . defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 412-

The Supreme Court has not elaborated on what "due weight" entails. As the Eighth Circuit has noted, the "due weight" standard is a "rather unusual statutory standard" that the circuits have applied in "somewhat different fashions." *S.D.*, 88 F.3d at 561. The Eighth Circuit has interpreted "due weight" to mean "that a court should ordinarily defer to the administrative panel's judgment in building the record, but it is within its discretion to hear other evidence if a party provides 'some solid justification' for expanding the record." *Gill v. Columbia 92 Sch. Dist.*, 217 F.3d 1027, 1037 (8th Cir. 2000) (citations omitted).

## B. <u>Supplementation of the Administrative Record</u>

The IDEA provides that District courts "shall hear additional evidence at the request of a party[.]" 20 U.S.C. § 1415(i)(2)(C)(ii). "Because the reviewing court must give due weight to the administrative proceedings, 'a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so.'" *S.D.*, 88 F.3d at 560 (citing *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 996 (1st Cir. 1990)). It is true that "rendering a decision on the record compiled before the administrative agency is the norm[.]" *Indep. Sch. Dist. No. 283 v. E.M.D.H.*, 960 F.3d 1073, 1079 (8th Cir. 2020) (internal citation omitted). However, the demonstration of a solid justification supports "deviat[ion] from this norm." *Id.* (citing *S.D.*, 88 F.3d at 560).

The Eighth Circuit has not elaborated or "expanded on what constitutes a 'solid justification.'" *Banwart v. Cedar Falls Comm. Sch. Dist.*, No. C18-2074-LTS, 2019 U.S. Dist. LEXIS 251341, at *16 (N.D. Iowa May 8, 2019). It also has not specified precise

---

13. *Loper Bright* reinforces the position that IDEA review is less deferential than review of other administrative agency actions and that courts have an independent duty to enforce IDEA.

circumstances under which supplementation is appropriate. The leading case, *S.D.*, noted that a party seeking to introduce additional evidence must notify the court and provide a solid justification for doing so. *S.D.*, 88 F.3d at 560. The court's analysis was truncated due to the factual circumstances of the case. It found the plaintiff had failed to present a solid justification to expand the administrative record because he "never submitted proposed additional evidence and never filed a written motion to supplement the record." *Id.* More recently, in *E.M.D.H.*, the court of appeals applied the "solid justification" standard, again without elaboration. *E.M.D.H.*, 960 F.3d at 1079.

Despite minimal guidance from the Eighth Circuit, district courts within this Circuit have relied on *Town of Burlington* to exercise their discretion to identify acceptable reasons to supplement the administrative record. *See, e.g., Banwart*, 2019 U.S. Dist. LEXIS 251341 at *16 (relying on *Town of Burlington* for appropriate reasons to supplement the record because the Eighth Circuit had not expanded on what constitutes a "solid justification"); *Moubry ex rel. Moubry v. Indep. Sch. Dist. No. 696 (Ely)*, 951 F.Supp. 867, 899-900 (D. Minn. 1996) (recognizing the "broad discretion that the reviewing Court wields in allowing any augmentation of the Administrative Record" and citing *Town of Burlington*); *Indep. Sch. Dist. No. 283 v. E.M.D.H. by & through L.H.*, No. CV 18-935 (DWF/LIB), 2018 WL 11397209 (D. Minn. Sept. 21, 2018), aff'd sub nom. *Indep. Sch. Dist. No. 283 v. E.M.D.H.*, 960 F.3d 1073 (8th Cir. 2020) (citing *Town of Burlington* reasons for supplementation); *Larson ex rel. Larson v. Indep. Sch. Dist. No. 361*, No. Civ. 02-3611(DWF/RLE), 2004 WL 432218, at *3 (D. Minn. Mar. 2, 2004) (relying on *Town of Burlington* in allowing supplementation of the administrative record).

*Town of Burlington* provides that "reasons for supplementation . . . might

4

include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Burlington v. Department of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984).

## II. <u>Unavailability of Witnesses</u>

Applying *Town of Burlington*, the precise "solid justification" for supplementing the record in this case is unavailability of witnesses caused by the truncated hearing time limit in the Missouri State Plan for Special Education and adhered to by the AHC.

### A. <u>Truncated Time Limit</u>

Part B of the Missouri State Plan provides that the Administrative Hearing Commission "may limit the length of any presentation in order to proceed with the hearing in an expeditious manner." It goes on to state that "[i]n general, a hearing should last no longer than two (2) days. Any hearing exceeding two (2) days requires good cause to be shown and must be documented on the record." *State Plan* at 81.

Consistent with that default, the Commission's June 20, 2025 order continued this matter to a truncated hearing on August 4-5, 2025, and allotted seven hours to each party. Decision at 1-2. It was not until the hearing itself that the Commission extended the proceeding to a third day and indicated Plaintiff had two hours remaining to elicit testimony. That allotment ran continuously against each party's total and encompassed all direct and cross-examination. Plaintiffs exhausted their time before completing their case-in-chief, and listed the eight witnesses they were unable to call.

The record does not reflect that Plaintiff's time was squandered. In the limited time allotted, Plaintiffs examined ten witnesses across three days, and the parties collectively moved, referenced, or relied upon well over six hundred exhibits, spanning

5

joint exhibits J-1 through J-174, Petitioner's exhibits 1 through 306, and Respondents' exhibits R-1 through R-173. Far from reflecting inefficiency, that density illustrates the opposite problem: a case of this scope, with multiple respondents, years of programming history, and eighteen disclosed witnesses, could not be fully tried in the time allotted, no matter how efficiently counsel proceeded.

Missouri's two-day default is also not compelled by, or typical of, how other jurisdictions administer IDEA due process hearings. Plaintiffs' survey of the other forty-nine states and the District of Columbia found no other jurisdiction that codifies a specific numeric cap on the number of hearing days; the overwhelming majority leave the length of the hearing to the presiding officer's discretion, to be scheduled from day to day until the evidence is complete. Nor is a two-day hearing what IDEA cases of any complexity actually require in practice: courts within the Eighth Circuit and elsewhere routinely review hearings that ran far longer. *See, e.g.*, *K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795, 802) (8th Cir. 2011) (nine-day hearing); *A.J.T. ex rel. A.T. v. Osseo Area Schs.*, 605 U.S. 335, 341 (2025) (five-day evidentiary hearing); *Indep. Sch. Dist. No. 283 v. S.D. ex rel. J.D.*, 88 F.3d 556, 559 (8th Cir. 1996) (12-day hearing); *Albright ex rel. Doe v. Mountain Home Sch. Dist.*, 926 F.3d 942, 946 (8th Cir. 2019) (11-day hearing); *Reese v. Bd. of Educ. of Bismarck R-V Sch. Dist.*, 225 F.Supp.2d 1149, (E.D. Mo. 2002) (seven-day hearing).

Measured against that backdrop, the presentation time for the party bearing the burden of proof was insufficient for Plaintiffs to have a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The

6

time limit became too restrictive as applied when it prevented Plaintiffs, who bore the burden of proof, from calling previously-disclosed witnesses with noncumulative testimony on issues the AHC later decided against them.

### B. Prejudice Caused By the Time Limit

The AHC's time limit did not merely inconvenience Plaintiffs. It created evidentiary gaps on issues the AHC then decided against Plaintiffs. Plaintiffs' Complaint alleges that the AHC placed significant time limitations on the presentation of evidence over Plaintiffs' objections, impacting their rights. Doc. 1, ¶ 214. The Complaint further alleges that arbitrary and restrictive time limits, together with limits on witness examination, curtailed Parents' ability to present their case and amounted to a procedural denial of due process. Doc. 1, ¶ 216(B)(ii).

### III.   Proposed Supplementary Evidence

"[A]n administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial." *Town of Burlington*, 736 F.2d at 791. This presumption may be rebutted by filing "[a] motion . . . to allow such a witness to testify within specified limits stating the justification for the testimony." *Id.* "Such an approach followed by a pretrial order that identifies who may testify and limits the scope of the testimony will enable the court to avoid a trial *de novo.*" *Id.*

20 U.S.C. § 1415(i)(2)(C) "does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony[.]" *Id.* at 790. Further, "[c]umulative evidence is generally precluded[.]" *Gray*, 2009 U.S. Dist. LEXIS 35751, at *2-3.

Plaintiffs do not seek open-ended discovery or a wholesale retrial. They seek limited testimony from identified, disclosed witnesses, confined to the subjects

proffered below, with reasonable cross-examination and any narrowly tailored rebuttal the Court deems necessary. This is consistent with Burlington's instruction that a court may identify who may testify and limit the scope of testimony to avoid converting IDEA review into a trial de novo. Burlington, 736 F.2d at 791.

Defendants would suffer no prejudice from this limited supplementation. The proposed witnesses are, or were, employees of SSD or Rockwood, were previously disclosed, and their testimony concerns documents and events already within the issues framed by the Commissioner. Defendants will have an opportunity to refute it with the introduction of their own evidence and via cross examination. See *Y.E. and M.K. v. Hewlett Woodmere Union Free Sch. Dist.*, 25-CV-01481 (JMA) (JMW), 2025 U.S. Dist. LEXIS 179142, at *16 (E.D.N.Y. Sept. 12, 2025) (rejecting the district's argument that supplementation would unfairly tip the scales, noting that the district could cross-examine the BCBA or introduce rebuttal testimony). *See also J.L. v. Lower Merion Sch. Dist.*, No. 20-1416-KSM, 2021 WL 4262321, at *5 (E.D. Penn. Sept. 17, 2021).

In *Monroe Bd. of Educ.*, the district court granted supplementation in part where parents sought to add evidence the hearing officer had excluded. The court explained that the hearing officer had excluded evidence concerning the ongoing effort to obtain IEEs, yet then found the evaluations reasonably timely and found that the parents had not substantiated a denial of FAPE from delay. *B. v. Monroe Bd. of Educ.*, No. 3:22-cv-174 (VDO), 2024 U.S. Dist. LEXIS 176957 at *1 (D. Conn. Sept. 30, 2024). The court permitted the excluded evidence to supplement the record to the extent it was relevant to the reasonable timing of the IEEs and whether the timing substantively affected the student's IEP. *Id.* at *14-15.

Pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii) and relying on *Town of Burlington, G.M.*

8

supports supplementation where a witness was unavailable during the administrative process and the proposed evidence was not so repetitive that it should be excluded from the supplemented record. *G.M. b/n/f Stephanie M. v. Salem City Sch. Bd.*, No. 7:25cv291, 2026 U.S. Dist. LEXIS 20083, at *11-12 (W.D. Va. Jan. 30, 2026). These cases confirm that where the administrative record is incomplete for reasons other than a party's strategic choice, and the proposed testimony is relevant and noncumulative, supplementation is appropriate.

In this case, the AHC limited the length of the hearing, preventing G.A. from calling several witnesses with relevant and informative testimony. Further, Plaintiffs here bore the burden of proof, were constrained by truncated time limits and the AHC's presentation clock, and identified the witnesses they were unable to call.

The Eighth Circuit and district courts have denied supplementation where the proposed evidence was later-created, related to post-hearing events that did not bear on the operative period, or reflected a party's attempt to cure an evidentiary omission without a sufficient justification. That is not this case. Plaintiffs seek testimony from disclosed witnesses concerning the same claims, same time period, and same disputed issues presented to the AHC. The testimony is absent because the AHC's time limit prevented Plaintiffs from presenting it, not because Plaintiffs reserved it.

*E.M.D.H.* is therefore distinguishable. There, the additional evidence was offered to show the student's progress following the administrative decision. *E.M.D.H.*, 960 F.3d at 1079. Here, Plaintiffs seek testimony concerning the record before the AHC and the claims the AHC actually decided. Likewise, this is not a case in which a party seeks to add a document that was available but inexplicably omitted, as in Rodriguez Mejia v. Banks, 124 LRP 35290 (S.D.N.Y. Sept. 27, 2024), or to add later-created expert reports

9

remote from the IEP period, as in James F. v. Clear Creek Indep. Sch. Dist., 124 LRP 28581 (S.D. Tex. July 29, 2024). The justification here is procedural in that the AHC's time limitation prevented Plaintiffs from calling disclosed, material witnesses.

The case at hand differs in that Plaintiffs explicitly informed the AHC through the prehearing conference statement, five-day disclosures, and the witness list that they planned to call numerous witnesses. On Day 3 of the hearing, Plaintiffs explicitly named the eight witnesses they were unable to call and stated that it was due to the time limit.

A. **Testimony Plaintiffs Were Prevented From Eliciting Due to the Hearing's Time Limit**

The AHC placed a strict time limit on the administrative hearing, which left Plaintiffs insufficient time to call all necessary witnesses. The time limit imposed on the hearing thus forced Plaintiffs, who bore the burden of proof, to truncate their case. Plaintiffs therefore seek testimony from witnesses who were prepared to testify at the administrative hearing but were functionally unable to do so due to the time constraints.

Due to the time restraint, counsel for Plaintiffs was unable to elicit testimony from Rockwood and SSD percipient and administrative witnesses. To the extent any of this testimony addresses events discussed by a witness who did testify, it is not duplicative. For example, it was revealed through the testimony of reading interventionist Lauren Fish that staff held care team meetings to discuss the effectiveness of reading interventions. Some of the participants included Fish, Krey, Branson, and Meyer. Fish testified that G.A. was discussed at every meeting and that she told both the staff present that G.A. had "the most severe case of dyslexia that [she'd] ever seen in [her] 21 years of teaching." What the administrators responsible for ensuring FAPE did regarding those concerns was not elicited due to time constraints.

10

Plaintiffs disclosed the witnesses pre-hearing. Plaintiffs, who bore the burden of proof, needed to call them to elicit testimony and admissions necessary to meet that burden. Before the close of Plaintiffs' evidence, counsel stated on the record that Plaintiffs' allotted time had been exhausted preventing the witness testimony.

The paragraphs below set forth the testimony and admissions Plaintiffs intended to elicit. The substance of this testimony is not speculative. It is drawn from each witness's own contemporaneous emails and records, and from testimony already given by other witnesses with direct knowledge of their conduct.

1. **Kayla Meyer** – Second Grade Special Education Teacher, SSD

Meyer was G.A.'s special education case manager during his second-grade year (2023-2024). Plaintiffs needed to call her to elicit testimony establishing what data she generated, the limits of her training in literacy instruction, and what, if any, specialized instruction she actually provided G.A.

No other witness called at the hearing had personal knowledge of Meyer's day-to-day instruction of G.A. Fish testified that Meyer did not share data with the second-grade MTSS team and that Meyer's services appeared "random." Exhibit R-22, Meyer's February 2024 service log, is the only record of the services she provided and reflects that required minutes were not delivered. Kenkel testified she had not personally reviewed Meyer's service logs and could not testify to her programming. Traughber testified that he located only three data points for Meyer's entire year.

The Commission's own decision confirms the resulting gap, stating that Plaintiffs chose not to call Meyer to testify. The Commission further states that "[s]ince Meyer was not called . . . the Districts did not have an opportunity to rebut Parents' claim." He then held, based on the record before us, Meyer provided basic reading instruction with

11

fidelity in Student's IEP. The Commission thus decided this issue against Plaintiffs based specifically on the absence of testimony Plaintiffs were prevented from presenting, not on any affirmative finding Meyer's instruction was in fact adequate.

**2. <u>Mollie Bolton</u>** – <u>Chief of Teaching, Learning, & Accountability, SSD</u>

Bolton oversees SSD's literacy curriculum and implementation of the Wilson Reading System district-wide. Plaintiffs needed to call her as an adverse witness to elicit admissions regarding SSD's 2018-2019 evaluation of its own Wilson implementation, her role in that evaluation, her role in reducing SSD's Wilson training requirements below what Wilson itself required, and her approval of G.A.'s placement with an instructor who did not meet Wilson's own criteria to work with him.

Exhibit 253 is SSD's 2018-2019 evaluation of its own Wilson implementation. The evaluation states that 76% of the students served by SSD failed to achieve ELA proficiency, and that, regardless of the intervention offered, students showed negligible normative growth. The report identified the specific mechanisms driving that failure, and each one recurred in G.A.'s case years later.  Bolton participated in the report.

Among other things, the report warned that Wilson lessons were being delivered by teachers without the required certification or full training because SSD had created a reduced training requirement for Wilson.  Bolton knowingly assigned Branson who was only just beginning her training and was still not certified after instructing G.A. The report also warned that a lack of oversight left teachers to modify or omit key lesson components and shorten instruction in ways that undermined fidelity.  Bolton provided no oversight of G.A.'s lessons, and, as already reflected in the record, Branson skipped Step 10 of the Wilson program entirely and used Step 9 in only a fraction of the required number of lessons. The report warned of a complete lack of systematic monitoring at the

district level and no fidelity mechanisms beyond the initial training period. No one associated with SSD ever observed a single lesson between Branson and G.A. The report warned of a lack of collaboration between special education and general education teachers that left classroom teachers unable to reinforce the skills being taught. G.A.'s third-grade teacher testified that she received no training on the Wilson program. Krey called Wilson instruction outside her wheelhouse.

Bolton is separately identified in the record as the person who determined G.A. could receive Wilson notwithstanding guidelines restricting practicum placements to fourth-graders or older repeating third-graders scoring between the 5th and 30th percentile. Additionally, Bolton wrote that "according to Wilson's guidelines we should not take this student as a practicum student."

Plaintiffs also need to examine Bolton regarding the arrangement reflected in Exhibits 291 through 306, in which SSD agreed to pay Wilson a fee so that Branson could remain assigned to G.A. rather than the certified instructor previously promised.

The Commission's own findings confirm what this gap in the record obscured. The Decision states that "[t]he District established that Branson was trained and qualified to provide Student Wilson instruction" and that the Commission does "not believe that Branson's lack of certification adversely impacted her instruction," crediting the fact that she "completed her observations, received coaching, and received and implemented feedback on her instruction" while "concurrently" completing a 90-hour instruction course. Decision at 48. The Commission further found that "Student may unfortunately have been progressing at the limit of his capabilities during this time." Decision at 49. The 2018-2019 report is district-wide evidence that this same pattern, regression regardless of the intervention offered, recurred broadly across SSD's caseload

13

and was not unique to G.A. No witness who testified could speak to that report's findings with the authority of Bolton.

### 3. **Lorinda Krey** – Principal, Rockwood

Krey is the principal of Fairway Elementary and a required participant in the recurring MTSS meetings at which G.A.'s lack of progress was discussed. Fish testified that she personally informed Krey of her opinion that G.A. was the most severe case of dyslexia she had encountered in her career. Plaintiffs needed to call Krey to elicit admissions concerning her own knowledge of that assessment, her own characterizations of G.A.'s progress to Mother, her personal knowledge of his continued stagnation, and her role in directing staff communication with Mother.

Mother's sworn testimony and deposition state that at the March 2025 IEP meeting, Krey told Mother that G.A. had experienced "a huge amount of growth" because his STAR percentile moved from the second to the fourth percentile, and that Krey "argued" with Mother when Mother disagreed. The existing record includes several other characterizations by Krey that were never tested under oath: her statement that decisions about G.A.'s programming were "beyond my wheelhouse"; and her statement to Mother that it was her "hope and dream that every kid at Fairway would improve the way that G.A. improved." Mother's deposition further states that when she raised Branson's certification status directly with Krey in August 2024, Krey referred the matter to Kenkel rather than responding to it herself.

### 4. **Stefanie Steffan** – Reading Interventionalist, Rockwood

Steffan is Rockwood's Coordinator of Elementary Literacy and Title Programs and is  Fish's direct supervisor. Plaintiffs needed to call her to elicit admissions regarding her direct, personal role in approving and directing G.A.'s reading

14

intervention programming, her own assessment of his needs, and Rockwood's response, or lack of response, to that assessment.

Fish testified that because of Meyer's lack of training, Fish sought and received "special permission" from  Steffan to provide G.A. daily reading intervention in addition to his SSD services. Steffan personally authorized this arrangement. Steffan was not a passive recipient of information about G.A.'s interventions; she made the programming decision that shaped what reading instruction he actually received, with direct knowledge that his SSD teacher lacked training in the relevant methodology.

Exhibit 59 further reflects that  Steffan agreed in writing with Mother's assessment that G.A. was overwhelmed by his interventions, after  Fish described him in the same email chain as the most difficult reading case she had encountered in a 21-year career. No witness who testified was asked what action, if any,  Steffan or Rockwood took in response to that shared assessment, or why G.A.'s programming did not meaningfully change for another full year afterward.

## IV.    <u>Conclusion</u>

The AHC's time limit created the evidentiary gap, and the AHC then relied on the resulting record to deny relief. Plaintiffs have provided the solid justification required in this Circuit. They respectfully request that the Court permit supplementation of the administrative record with limited testimony from the witnesses identified above, confined to the proffered subjects, with reasonable cross-examination and any limited rebuttal the Court deems appropriate.

Respectfully submitted,

By: /s/ Diane L. Dragan
Diane L. Dragan, #73591MO

15

DRAGAN LAW FIRM, LLC
10805 Sunset Office , Ste. 210
St. Louis, Missouri 63127
Tel: (314) 788-7323
diane@draganlawfirm.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true copy of the foregoing was served upon the via following attorneys via operation of the Court's electronic filing system on July 6, 2026, as follows:

Robert J. Thomeczek
bothomeczek@mickesotoole.com
Ashley M. Wicks
awicks@mickesotoole.com
Anne R. Kerns
akerns@mickesotoole.com
12412 Powerscourt Drive, Suite 200
St. Louis, Missouri 63131
Telephone: (314) 878-5600
*Attorneys for Respondent Special School District of St. Louis County*

Julie Z. Devine
jdevine@lashlybaer.com
Frederike Katharina Winslow
fwinslow@lashlybaer.com
LASHLY & BAER, P.C.
714 Locust Street
St. Louis, Missouri 63101
(314) 621-2939/Telephone
(314) 621-6844/Facsimile
*Attorneys for Rockwood School District*

/s/ Diane L. Dragan

16